UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| HORACE RICHARDS, | : | Civ. No. | 3:16cv1089(RNC) |
|    a.k.a. "Desmond Wolfe" | : | Crim No. | 3:99cr266(RNC) |
| | : | | |
| v. | : | | |
| | : | | |
| UNITED STATES OF AMERICA | : | February 3, 2017 | |

### GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner Horace Richards seeks to vacate, set aside, or correct his sentence of 262 months of imprisonment based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Specifically, Richards contends that the sentencing court (Chatigny, J.) erroneously calculated his guidelines range of imprisonment by treating his prior Connecticut conviction for second-degree assault as a "crime of violence" and applying the career offender enhancement.

This Court should deny Richards's motion for two independent reasons. First, *Johnson* does not apply retroactively to collateral attacks on guidelines sentences. Second, even if *Johnson* did apply retroactively, the second-degree assault conviction—in which Richards slashed the victim in the face with a knife—qualifies categorically as a "crime of violence" under the enumerated offenses clause of U.S.S.G. § 4B1.2.[1]

---

[1] The government does not press an argument that Richards's second-degree assault conviction alternatively qualifies under the force clause of U.S.S.G. § 4B1.2. It is clear that "Conn. Gen. Stat. § 53a-60 is divisible, defining several distinct offenses" and that most of those offenses have "as an element the use, attempted use, or threatened use of physical force against the person of another." *United States v. Moreno*, 821 F.3d 223, 228 (2d Cir. 2016) (internal quotation marks omitted). But the government has not been able to retrieve records that would rule out the non-qualifying subsection. Notwithstanding that the burden falls on Richards to demonstrate actual prejudice, in the absence of such records, the government focuses only on the enumerated offenses clause.

**I.     Background**

On November 17, 1999 a federal grand jury indicted Richards on various narcotics charges.[2] On January 11, 2001, Richards pleaded guilty to Count One , which charged him with conspiring to distribute 1000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846.

On April 12, 2001, the United States Probation office issued its initial disclosure of the Presentence Report (hereinafter the "PSR"). It concluded that Richards was a career offender and calculated his base offense level to be 37. *See* PSR ¶ 278. Three levels were subtracted in light of the defendant's acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 34. *See* PSR ¶ 279. This is the same offense level that would have been applicable if Richards was not a career offender. *See* PSR ¶ 278.

With a criminal history category of VI, Richards faced a guidelines range of imprisonment of 262-327 months.[3] On June 4, 2001, the district court imposed a sentence of 262 months. *See* Dkt. No. 816. At sentencing, the district court focused on Richards's prior second-degree assault conviction: "Violence is also an important consideration in deciding whether a person should be sentenced as a career offender. And with this in mind, can you tell me anything about your assault conviction?" *See* Transcript of Sentencing Hearing at 23. After hearing from Richards, defense counsel, and government counsel regarding this conviction, the district court explained:

> The assault conviction is also serious.  While it involved a woman and apparently a conflict between you and another man who had a long relationship with this woman and was apparently still emotionally involved with her in some way.  Nevertheless, you took out a knife and cut this man on the face.  I don't know if he was telling the truth when he said you pulled a gun on him during the summer, but the fact of the matter is you inflicted an injury on him that was disfiguring, That's a serious crime.

---

[2] The defendant was listed as Desmond Wolfe in the indictment.  His true name is Horace Richards.

[3] Without application of the career offender guidelines, Richards fell in Criminal History Category IV, exposing him to a guidelines range of imprisonment of 210-262 months.  *See* PSR First Addendum; Transcript of Sentencing Hearing at 9.

Transcript of Sentencing Hearing at 39. On June 5, 2001, judgment entered. *See* Dkt. No. 822.

On June 26, 2015, the Supreme Court decided *Johnson*, thereby invalidating the residual clause of the Armed Career Criminal Act (the "ACCA") as unconstitutionally vague. On September 19, 2016, Richards filed a § 2255 motion based on *Johnson*.[4]

## II.     Non-retroactivity

Richards's § 2255 motion fails on the law. For his argument to prevail, this Court must conclude that *Johnson* applies retroactively to the residual clause previously set forth in U.S.S.G. § 4B1.2(a)(2). It does not.[5]

The application of *Johnson* to the ACCA is a substantive change in the law because it necessarily alters the statutory sentencing range, shifting between 0-10 years and 15 years-life. But the application of *Johnson* to the guideline's residual clause works no such substantive change. *See Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). Indeed, the crux of *Welch* is the Supreme Court's conclusion that *Johnson* placed a certain punishment (i.e., any sentence exceeding ten years of imprisonment) beyond a sentencing court's reach. *See id.* ("Before *Johnson*, the [ACCA] applied to any person who possessed a firearm after three violent felony convictions, even if one or more of those convictions fell under only the residual clause. An offender in that situation faced

---

[4] In 2003 and 2005, Richards unsuccessfully litigated two other unrelated § 2255 motions. *See* Dkt. Nos. 1024, 1061. He therefore sought and received authorization from the Second Circuit to pursue this third § 2255 motion. Moreover, in 2014, Richards unsuccessfully pursued a motion for a sentence reduction under 18 U.S.C. § 3582. *See* Dkt. Nos. 1086, 1088.

[5] To be clear, the government recognizes that *Johnson*'s holding that the ACCA's residual clause is invalid applies prospectively to the guidelines's former residual clause. Indeed, the government has advocated this position post-*Johnson* in sentencing proceedings and in cases pending on direct appeal as of the date *Johnson* was decided. But different—and more restrictive—retroactivity principles govern when a defendant seeks to undo a final judgment on the basis of an intervening decision. *See generally Teague v. Lane*, 489 U.S. 288 (1989) (plurality opinion).

15 years to life in prison. After *Johnson*, the same person engaging in the same conduct is no longer subject to the [ACCA] and faces at most 10 years in prison.").

"Substantive rules . . . set forth categorical constitutional guarantees that place certain criminal laws and punishments altogether beyond the State's power to impose." *Montgomery v. Louisiana*, 136 S. Ct. 718, 729 (2016). A constitutional rule therefore has retroactive effect where even the "use of flawless sentencing procedures" would not legitimate the punishment because "the Constitution immunizes the defendant from the sentence imposed." *Id.* at 730.

Against this backdrop, it is clear that *Johnson* works differently in the context of the ACCA than it does in the context of the guidelines. Under the ACCA, a defendant faces higher statutory minimum and maximum terms of imprisonment (15 years-life). If that exposure rests on a predicate conviction that counted only under the ACCA's residual clause, the sentencing court necessarily imposed an unlawful sentence. *See Welch*, 136 S. Ct. at 1268 ("[A] court lacks the power to exact a penalty that has not been authorized by any valid criminal statute.").

But in the guidelines context, an erroneous application of an enhancement does not change the statutory penalties set by Congress for the offense of conviction. It results in an incorrect advisory guidelines range; it does not increase the minimum or maximum penalties. *See Mistretta v. United States*, 488 U.S. 361, 396 (1989) (reasoning the guidelines do not usurp "legislative responsibility for establishing minimum and maximum penalties for every crime," but instead operate "within the broad limits established by Congress"). Because a guidelines provision cannot "mandate or authorize any sentence," *Welch*, 136 S. Ct. at 1265, an erroneous guidelines calculation does not alter the range of sentencing options available to the sentencing court. The function of the guidelines range instead is to provide a framework for the exercise of discretion under 18 U.S.C. § 3553(a). *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1346 (2016) ("The guidelines inform and instruct the district court's determination of an appropriate sentence."). The

guidelines therefore relate to the "manner of determining" the defendant's sentence, *Welch*, 136 S. Ct. at 1268, which is the function of a procedural rule (rather than a substantive rule), *see Molina-Martinez*, 136 S. Ct. at 1345 ("A district court that improperly calculates a defendant's Guidelines range, for example, has committed a significant procedural error.") (internal quotation marks and modifications omitted).

A rule can have a substantive function in one context and a procedural function in another. That is the case here: *Johnson* sets forth a substantive rule in ACCA cases, but not in guidelines cases (because an ACCA error results in a sentence that is "not authorized by substantive law," *Welch*, 136 S. Ct. at 1266, whereas a guidelines error does not). Weighing an improper factor in reaching an authorized sentence within an unchanged statutory framework is a procedural error, not a substantive one.

For these reasons, the legal premise of Richards's argument is flawed. *Johnson* simply does not apply retroactively to the guidelines's former residual clause.[6]

### III. Merits

Richards does not dispute that his prior drug trafficking conviction qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). He instead challenges whether his second-

---

[6] The government recognizes that on June 27, 2016, the Supreme Court granted a petition for a writ of certiorari in *Beckles v. United States*, 136 S. Ct. 2510. In that case, the Supreme Court will consider, among other questions, "[w]hether *Johnson* applies retroactively to collateral cases challenging federal sentences enhanced under the residual clause in U.S.S.G. § 4B1.2(a)(2)" and "[w]hether *Johnson*'s constitutional holding applies to the residual clause in U.S.S.G. § 4B1.2(a)(2), thereby rendering challenges to sentences enhanced under it cognizable on collateral review." Accordingly, this Court could choose to stay Richards's § 2255 motion pending the Supreme Court's resolution of the retroactivity question in *Beckles*. *See Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016) (per curiam) (granting authorization to file second or successive § 2255 motion, but instructing the district court "to hold Blow's § 2255 motion in abeyance pending the outcome of *Beckles*" because "the Supreme Court will likely decide in *Beckles* whether *Johnson* applies retroactively to the Guidelines").

degree assault conviction qualified as a "crime of violence" under U.S.S.G. § 4B1.2(a). He contends that this conviction could have qualified only under the guidelines's former residual clause. But his contention is misplaced.

As set forth above, the district court found that Richards's second-degree assault conviction arose out of an incident in which Richards used a knife to slash another man's face. But no judicial fact-finding was required to determine that this conviction qualified as a "crime of violence" under the enumerated offenses clause of U.S.S.G. § 4B1.2(a). Whether considering the guidelines in effect at the time of Richards's sentencing (that is, the 2000 version of the guidelines) or the guidelines now in effect (that is, the 2016 version of the guidelines), U.S.S.G. § 4B1.2(a)(2) enumerates several offenses that qualify as crimes of violence and included in that list is "aggravated assault." *See* U.S.S.G. § 4B1.2 cmt. n.1 (2000); U.S.S.G. § 4B1.2(a)(2) (2016).[7] The guidelines offer no further commentary on when an assault is considered aggravated and the relevant Connecticut statutes do not use the language of aggravated assault versus simple assault. But a review of the Connecticut assault statutes makes plain that second-degree assault is aggravated assault. *See* Conn. Gen. Stat. §§ 53a-59 – 53a-61. Indeed, second-degree assault (a felony) differs from third-degree assault (a misdemeanor) in that it requires proof of an aggravating factor and it carries increased penalties. *Compare* Conn. Gen. Stat. § 53a-60 *with* Conn. Gen. Stat. § 53a-61.

Even assuming *arguendo* that *Johnson* applies retroactively to invalidate the guidelines's former residual clause and the sentencing court relied on that former residual clause in applying the career offender enhancement, Richards still cannot establish actual prejudice. His second-de-

---

[7] As the United States Sentencing Commission explained in adopting Amendment 798, "all enumerated offenses are now included in the guideline at §4B1.2; prior to the amendment, the list was set forth in both §4B1.2(a)(2) and the commentary at Application Note 1." This change was made "[f]or easier application."

gree assault conviction qualified—and continues to qualify—as a crime of violence under the enumerated offenses clause of U.S.S.G. § 4B1.2(a).

## IV.  Conclusion

Richards's third § 2255 motion fails on the law because *Johnson* does not apply retroactively to the guidelines (or, in the alternative, Richards's motion should be stayed pending the Supreme Court's decision regarding retroactivity in *Beckles*). But even assuming retroactivity, Richards's motion fails on the merits because his second-degree assault conviction remains a predicate crime of violence. Accordingly, this Court should deny or dismiss Richards's § 2255 motion.[8]

Respectfully submitted,

DEIRDRE M. DALY
U.S. ATTORNEY

 /s/

RAY MILLER
ASSISTANT U.S. ATTORNEY
Federal Bar No. CT20451
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: (203) 821-3700

---

[8] Moreover, Richards has not made the requisite showings for an evidentiary hearing or for the issuance of a certificate of appealability.

## CERTIFICATE OF SERVICE

This is to certify that on February 3, 2017, a copy of the foregoing opposition and the relevant exhibits were filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                                                                             _/s/_____
                                                                                                             RAY MILLER
                                                                                                             ASSISTANT U.S. ATTORNEY